## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **MEHDI BELGADA, HORMOZ** | : | **CIVIL ACTION NO.** |
| **AKHUNDZADEH, and ADANIEL** | : | |
| **DZIEKAN, individually and on behalf** | : | |
| **of all other similarly situated individuals** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HY'S LIVERY SERVICE, INC.,** | : | |
| **ROBERT LEVINE, MATTHEW** | : | |
| **LEVINE, and SHELLEY LEVINE** | : | |
| **Defendants** | : | **JANUARY 31, 2018** |

## CLASS ACTION COMPLAINT

## I.    INTRODUCTION

1.    Employers in Connecticut must provide employees at least a thirty (30) minute meal

break and must compensate employees for meal breaks where an employer's operations

are of a "continuous nature" and requires its employees to be "available to respond to

urgent or unusual conditions at all times." Conn. Agencies Reg. Sec. 31-51ii.  Federal

law requires employers to pay employees for their meal breaks "during which a worker

performs activities predominantly for the benefit of the employer."  Fair Labor Standards

Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); 29 C.F.R Sec. 785.19.  *Reich v. SNET*, 121 F.3d

58, 64 (2d Cir. 1997).  These rules protect a worker's right to eat regular meals during

their work day and prevent wage theft when workers' meal breaks are spent performing

duties for their employer.

2.    Defendants, Hy's Livery Service, Inc. and its owners, automatically deduct one hour per

day from the work time of their Chauffeurs as meal time, when in fact those workers do

not actually take bona fide meal breaks.  Defendants rules and procedures imposed

restrictions and responsibilities on their Chauffeurs during their work days which were so burdensome that taking meal breaks was virtually impossible. Defendants also refused to correct their Chauffeur's pay when they were put on notice that their Chauffeurs had not taken bona fide meal breaks.

3. Defendants' intentional violations of state and federal wage laws have deprived Plaintiffs and the putative class of hundreds of thousands of dollars of unpaid wages and overtime pay and requires them to pay damages, liquidated damages, penalty damages, attorneys' fees and costs.

## II. PARTIES

4. Plaintiff Mehdi Belgada ("Belgada") is an individual residing in Milford, Connecticut. At all times relevant to this Complaint, Belgada was an employee of Defendants, as that term is defined in the Fair Labor Standards Act ("FLSA") and the Connecticut Wage Act ("CWA").

5. Plaintiff Hormoz Akhundzada ("Akhundzada") is an individual residing in Bridgeport, Connecticut. At all times relevant to this Complaint, Akhundzada was an employee of Defendants, as that term is defined in the FLSA and CWA.

6. Plaintiff Daniel Dziekan ("Dziekan") is an individual residing in Milford, Connecticut. At all times relevant to this Complaint, Dziekan was an employee of Defendants, as that term is defined in the FLSA and CWA. (Belgada, Akhundzada, and Dziekan collectively are referred to as the "Plaintiffs".)

7. Defendant Hy's Livery Services, Inc. ("Hy's"), is a Connecticut corporation with a principal place of business located at 480 Island Lane, West Haven, Connecticut. At all

times relevant to this Complaint, Hy's was the employer of Plaintiffs and all other similarly situated individuals, as that term is defined in the FLSA and CWA.

8.   Defendant Robert Levine ("R. Levine") is the President and an owner of Hy's.  At all times relevant to this Complaint, R. Levine had the authority to set the hours of employment, maintain employment records, to direct the work and to determine the rate and method of payment of wages of Plaintiffs and all other similarly situated individuals. R. Levine's exercise of that authority was the direct cause of Hy's failure to pay wages as set forth below.  Accordingly, R. Levine was the employer of Plaintiffs and all other similarly situated individuals as that term is defined in the FLSA and CWA.

9.   Defendant Matthew Levine ("M. Levine") is the Vice President and an owner of Hy's. At all times relevant to this Complaint, M. Levine had the authority to set the hours of employment, maintain employment records, to direct the work and to determine the rate and method of payment of wages of Plaintiffs and all other similarly situated individuals. M. Levine's exercise of that authority was the direct cause of Hy's failure to pay wages as set forth below.  Accordingly, M. Levine was the employer of Plaintiffs and all other similarly situated individuals as that term is defined in the FLSA and CWA.

10.  Defendant Shelley Levine ("S. Levine") is the Secretary and an owner of Hy's.  At all times relevant to this Complaint, S. Levine had the authority to set the hours of employment, maintain employment records, to direct the work and to determine the rate and method of payment of wages of Plaintiffs and all other similarly situated individuals. R. Levine's exercise of that authority was the direct cause of Hy's failure to pay wages as

set forth below.  Accordingly, S. Levine was the employer of Plaintiffs and all other similarly situated individuals as that term is defined in the FLSA and CWA.

## III.    JURISDICTION AND VENUE

11.    This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331.

12.    This Court has jurisdiction over Plaintiffs' CWA claims pursuant to 28 U.S.C. § 1367 since they are so related to the FLSA claims that they form part of the same case or controversy.

13.    Venue is proper in this district under 28 U.S.C. § 1391 because the acts or omissions giving rise to the claims in this Complaint took place in this district.

## IV.    LEGAL PRINCIPLES

14.    Employers in Connecticut must pay employees their agreed upon rate for each hour worked, and must pay employees one-and-one-half times their regular rate of pay for all hours worked over forty per week.  Conn. Gen. Stat. §§ 31-68, 31-71a, 31-72, *et seq.* ("CWA"). 29 U.S.C. § 207, *et seq.* ("FLSA").

15.    Employers must provide employees a meal break of at least thirty consecutive minutes each day; where an employer's operations are of a "continuous nature" and require employees to be "available to respond to urgent or unusual conditions at all times" such meal breaks must be compensated.  Conn. Agencies Reg. § 31-51ii.

16.    Employers must pay employees for their meal breaks "during which a worker performs activities predominantly for the benefit of the employer."  *Reich v. SNET*, 121 F.3d 58, 64 (2d Cir. 1997); Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); 29 C.F.R § 785.19.

17.    "Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals." C.F.R. § 785.19.

18.    Employers must count as hours worked time away from the premises "if the employer knows or has reason to believe that the work is being performed." C.F.R. § 785.12.

19.    An employer must "advise his employees in writing, at the time of hiring, of the rate of remuneration, hours of employment and wage payments schedules, and (…) make available to his employees, any employment practices and policies or change therein with regard to wages (…) and comparable matters." Conn. Gen. Stat. § 31-71f.

20.    Employers must keep true and accurate records of employees' hours worked for each employee.  29 U.S.C § 211(c), Regs., Conn. State Agencies § 31-60-12.

## V.    STATEMENT OF FACTS

21.    Defendant Hy's is a Connecticut corporation providing "airport limo service to all airports in New England, Nationwide and Worldwide …" www.hyslimo.com/services/airport-limo-service/

22.    Hy's has employed Chauffeurs throughout its existence to pick up, and transport its clients to New England airports.

23.    Hy's pays its Chauffeurs on an hourly basis, usually $11 per hour, and tracks their time to the nearest one hundredth of an hour.

24.    Hy's requires its Chauffeurs to report to work, clock in, pick up a limousine, inspect it, make sure it is fully fueled and stocked and then drive to pick up its clients and deliver

them to the airport.  At the end of the day, Hy's requires its Chauffeurs to return to the premises, drop off the vehicle and clock out.

25.    On or about December 30, 2015, Defendants implemented a new meal break policy for their Chauffeurs, stating as follows:

> **As of the pay period beginning January 3, 2016, all Chauffeurs will be given a 1 hour, unpaid meal break every day, while on the road at a time decided by dispatch, pursuant to the U.S. Dept. of Labor, Code of Federal Regulations, regulation #785.19.**  If for any reason, due to scheduling or length of shift, you did not get that break, and it was deducted, please let me know and it will be adjusted.  Also, if you have questions, please come and see me.  Please print and sign below that you received and understand this memo.

*See* Exhibit A (emphasis added)[1].

26.    C.F.R. § 785.19 Meal., the regulation referenced in Defendant's policy, sets forth the requirements of bona fide meal periods as follows:

> ***Bona fide meal periods.*** Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. **The employee must be completely relieved from duty for the purposes of eating regular meals.** Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. **The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.** For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating (emphasis added).

27.    Accordingly, Defendants, who required their Chauffeurs to sign the 12/30/15 Memo and collected the signatures, agreed to pay their Chauffeurs wages for their work when they were not "completely relieved from duty for the purpose of eating regular meals."

---

[1] See Exhibit A, Zubrinsky Memo dated 12/30/15.  Chauffeur Manager Dennis Martinez contemporaneously communicated the same policy to employees by email stating they would be required to sign, attached hereto as Exhibit B.

28. From January 3, 2016, to the present, and on a continuing basis, Defendants automatically deducted a one-hour unpaid meal period per day from the pay of each of Defendants' Chauffeurs, purporting the deduction to be for an unpaid *bona fide* meal break.

29. However, Defendants never told Plaintiffs and the putative class the "time decided by dispatch" when they could take their breaks as agreed upon.

30. Defendants assigned duties to their Chauffeurs, the nature of which was "continuous" in that it "requires that employees be available to respond to urgent or unusual conditions at all times."

31. Defendants further restricted and confined Chauffeurs' meal break time on pain of discipline by the implementation and enforcement of various written rules, procedures, and through the continuous nature of the work which Defendant knew or should have had knowledge, including but not limited to the following:

   a.   Defendants defined their Chauffeurs' meal break "procedure" as follows:

   If you must leave your customer's location for any reason whatsoever you must follow the appropriate procedure.  First of all, you should never leave a client's location **until at least twenty minutes have passed** since you dropped them off.  This confirms that the client is in the correct location, and that nothing additional is needed from inside the vehicle.  Next, as **quickly as possible you should proceed to the nearest location** for you to obtain food and/or a restroom facility, etc.  Then, **immediately return to where the customer is supposed to meet you and consume the food there** so that you will be ready should your client need you.  Always remember that certain foods have strong odors and that the **vehicle must always be sanitized prior to picking up the client**.  Never transfer the smell of food into the vehicle. You are **never to stop while the client is in the car**. (emphasis added)

b.      Defendants required Chauffeurs to be "available to service their clients at all times….If you are "ON DUTY" you are available for the day (minimum 12 hours)";

c.      Defendants define "on-duty" time as follows:

- Chauffeurs who are engaged in waiting for or meeting clients at an airport, or any other location.
- Chauffeurs who are operating any vehicle under the direction of their company.
- Any time the Chauffeur is in the presence of a client.
- Any time the Chauffeur is being compensated on the companies' time.

d.      Defendants required Chauffeurs to get "coffee, food, etc **PRIOR to arriving at the office for work.** Your main objective once you leave the office is to **GET TO YOUR Pickup LOCATION**. Chauffeurs who stop somewhere other than their pickup location while on duty will be disciplined accordingly." (emphasis in the original);

e.      Defendants prohibited Chauffeurs from eating within vehicles;

f.      Defendants required Chauffeurs to arrive fifteen minutes early to assigned pickups, enforced by GPS monitoring;

g.      Defendants required Chauffeurs to stay for twenty minutes after drop-offs, enforced by GPS monitoring;

h.      Defendants required that Chauffeur lunch locations be within two miles of their next assigned pick up point, enforced by GPS monitoring;

i.      Defendants required that Chauffeurs carry smart phones which had to be kept turned on and with them always;

8

j.      Defendants required Chauffeurs to constantly check the websites of the airlines for the status of the flights of their customers and confirm terminal pick up locations which were subject to change;

k.      Defendants required that Chauffeurs clean and stock the vehicles when clients were away from the vehicles;

l.      Defendants held their Chauffeurs responsible for any damage to Defendants' vehicles by charging them, regardless of whether the Chauffeur had caused the damages, thereby conferring significant custodial responsibilities upon their Chauffeurs;

m.      Defendants knew or reasonably should have known that their Chauffeurs experience heavy traffic in New York City / near airports, making *bona fide* meal periods impossible;

n.      Defendants knew or reasonably should have known that parking is scarce in New York City / near airports, making *bona fide* meal periods impossible; and

o.      Defendant knew or reasonably should have known the financial expense of parking in New York City / near airports is cost-prohibitive for their Chauffeurs.

32.   Defendants thus for all practical purposes prevented their Chauffeurs from taking *bona fide* meal breaks and benefitted by having their business needs met through the unpaid work of their Chauffeurs.

33.   Defendants still usually and customarily refused paying for "actual hours worked" even upon being notified by their Chauffeurs that no *bona fide* meal period was taken, including but not limited to the following:

a.    Defendants responded to their Chauffeurs with needless inquiries even though the Chauffeurs had provided more than adequate information on actual hours worked;

b.    Defendants argued that a break could have been taken between drops and pickups, even when their Chauffeurs notified Defendants of actual hours worked, i.e. the Chauffeurs were stuck in traffic or put on standby by the dispatcher; and

c.    Defendants retaliated against their Chauffeurs who persisted in being paid for time spent working through unpaid meal breaks by cutting their scheduled hours and assignments.

34.    Defendants conduct in resisting and refusing to pay for actual hours worked is particularly egregious because they had more than adequate access to information to make the proper corrections; they could tell when Chauffeurs had not taken *bona fide* meal breaks through their log-in policy, and through their smartphone application *Livery Coach*, but nevertheless continued to make the automatic deductions in violation of federal regulations and the agreement.

35.    As a result, Defendants deducted approximately one hour per day, or 5-6 hours per week from the pay of each of their Chauffeurs, for each week that they worked, when under state and federal law this time should have been paid as compensable work time for actual hours worked.

36.    Defendants usually scheduled their Chauffeurs for twelve (12) hour days – sixty to seventy-two (60 - 72) hour weeks - but their mealtime hours were automatically and improperly deducted, and in addition, they were not paid overtime compensation at a rate

of one-and-one-half times their regular rate of pay for all hours over 40 per week, as
required by the CWA and FLSA.

## VI.    COLLECTIVE AND CLASS ACTION ALLEGATIONS

### A.    The FLSA Class

37.    Belgada, Akhundzada, and Dziekan ("Plaintiffs") bring this action on behalf of
themselves and all other similarly situated employees, present and former, who were
and/or are affected by the actions, policies and procedures of Hy's, R. Levine, M. Levine,
and S. Levine ("Defendants") as described herein.

38.    In addition, and in the alternative, Plaintiffs bring this action in their individual and
personal capacities, separate and apart from the class claims set forth herein.

39.    The FLSA class is defined as follows:

> All current and former employees of Defendants who were employed as
> Chauffeurs from January 3, 2016, through the date of final judgment in this
> matter.

40.    Plaintiffs reserve the right to amend said class definition consistent with information
obtained through discovery.

41.    Plaintiffs sue on behalf of themselves and those members of the FLSA class who have
filed or will file with the Court their consents to sue.  This is an appropriate collective or
representative action under 29 U.S.C. § 216(b), sometimes referred to as an "opt-in class
action," in that Plaintiffs and the members of the putative class, are similarly situated.

42.  Defendants have engaged in a widespread pattern and practice of violating the provisions

of the FLSA by failing to pay Plaintiffs, and other similarly situated employees and

former employees in accordance with the provisions of the FLSA.

**B.    The Connecticut Rule 23 Class**

43.  Plaintiffs also sue on behalf of themselves and all other members of the Connecticut

class, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

44.  The Connecticut Class is defined as follows:

>   All current and former employees of Defendants who were employed as
>
>   Chauffeurs at any time from January 3, 2016 through the date of final judgment.

45.  Plaintiffs reserve the right to amend said class definition consistent with information

obtained through discovery.

46.  Class certification for these Connecticut law claims is appropriate under Rule 23(a) and

Rule 23(b)(3) because all the requirements of the Rules are met.

47.  The class is so numerous that joinder of all members is impracticable.  On information

and belief, there have been more than fifty (50) Chauffeurs employed by Defendants in

Connecticut during the past two years.

48.  There are questions of law and fact common to the class, including whether the putative

class members worked hours for which they were not paid overtime compensation in

violation of Connecticut law, and whether Defendants' conduct was willful.

49.  The claims of Plaintiffs are typical of those of the class members.  The claims of

Plaintiffs encompass the challenged practices and course of conduct of Defendants.

Furthermore, the claims of Plaintiffs are based on the same legal theories as the claims of

the putative class members. The legal issues as to the violation of the CWA by

Defendants' conduct applies equally to Plaintiffs and to the class.

50.    Plaintiffs will fairly and adequately protect the interests of the class.  The claims of

Plaintiffs are not antagonistic to those of the putative class and they have hired counsel

skilled in the prosecution of class actions.

51.    Common questions of law and fact predominate over questions affecting only

individuals, and a class action is superior to other available methods for the fair and

efficient adjudication of this controversy.  This proposed class action under Fed. R. Civ.

P. 23 presents few management difficulties, conserves the resources of the parties and the

court system, protects the rights of each class member and maximizes recovery to them.

**VII.    COUNT ONE –COLLECTIVE ACTION CLAIM UNDER 29 U.S.C. § 216(b) FOR VIOLATION OF THE OVERTIME PROVISIONS OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF PLAINTIFF AND THE FLSA CLASS**

52.    Based on the foregoing, Defendants' conduct in this regard was a willful violation of the

FLSA, in that Defendants knew or should have known that it was not entitled to

automatically deduct an hour a day as unpaid meal breaks, but did so anyway, and failed

to pay Plaintiffs for that time when in fact no *bona fide* meal breaks were taken.  To the

extent that Plaintiffs had worked 40 hours that week separate and apart from these meal

breaks, this time was compensable overtime under the FLSA.

53.    Accordingly, Plaintiffs, and all other members of the FLSA class are entitled to

compensation at one–and-one-half times their regular rate of pay for all hours worked in

excess of forty per week, liquidated damages, attorneys' fees and court costs, pursuant to

29 U.S.C. § 216(b).

**VIII.   COUNT TWO – CLASS ACTION CLAIM FOR VIOLATION OF THE OVERTIME PROVISIONS OF THE CWA ON BEHALF OF PLAINTIFF AND THE CONNECTICUT CLASS**

54.     Based upon the foregoing, Defendants violated the CWA by automatically deducting an hour a day from their Chauffeurs' pay when in fact their Chauffeurs had worked during their meal breaks.

55.     Accordingly, Plaintiffs, and all other members of the Connecticut Class are entitled to compensation, either at straight time for weeks in which they worked forty or less total hours, or at one–and-one-half times their regular rate of pay for all hours worked more than forty per week, as well as penalty damages, attorneys' fees, and court costs, pursuant to Conn. Gen. Stat. § 31-68.

## IX.    DEMAND FOR RELIEF

WHEREFORE, Plaintiffs claim, individually and on behalf of all other similarly situated persons:

a.    That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have been at any time during the three years immediately preceding the filing of this suit, employed by Defendants as Chauffeurs.  Such notice shall inform them that this civil action has been filed, the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

b.    Certification of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of members of the Connecticut class and the appointment of Plaintiffs and their counsel to represent the class;

c.    Unpaid overtime wages under the FLSA;

d.    Unpaid overtime wages under the CWA;

e.    Withheld wages under the CWA;

f.    Liquidated damages under the FLSA;

g.    Penalty damages under CWA;

h.    Pre-Judgment and Post-Judgment interest, as provided by law;

i.    Attorneys' fees and costs of suit under the FLSA and CWA, including expert fees; and

j.    Such other and further relief as the Court deems just and equitable.

## X.     JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

Plaintiffs, individually and on behalf of all
other similarly situated individuals

By:  */s/ Richard E. Hayber*
Richard E. Hayber
Hayber Law Firm, LLC
221 Main Street, Suite 502
Hartford, CT 06106
Fed Bar No.: ct11629
(860) 522-8888 telephone
(860) 218-9555 facsimile
rhayber@hayberlawfirm.com

By:   */s/ Michael Petela*
Michael Petela
Fed. Bar No. ct28251
The Hayber Law Firm, LLC
900 Chapel Street, Suite 620
New Haven, CT 06510
Fed Bar No. ct28251
(203) 691-6491
(860) 218-9555 (facsimile)
mpetela@hayberlawfirm.com

Attorneys for the Plaintiffs